[Cite as *State v. Hollie*, 2026-Ohio-2665.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

DAVID N. HOLLIE,

        Defendant-Appellant.

CASE NO. 2025-T-0094

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2025 CR 00666

---

## OPINION AND JUDGMENT ENTRY

Decided: July 13, 2026
Judgment: Affirmed

---

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Christopher P. Lacich*, Roth, Blair, Roberts, Strasfield & Lodge, L.P.A., 100 East Federal Street, Suite 600, Youngstown, OH 44503 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, David N. Hollie, appeals his convictions for Murder, Having Weapons while Under Disability, Tampering with Evidence, Failure to Comply with Order or Signal of Police Officer, and Receiving Stolen Property, following a jury trial in the Trumbull County Court of Common Pleas. Hollie argues (1) that trial counsel was ineffective for failing to enable him to view video of the killing prior to trial; and (2) that the trial court erred by not providing the jury an instruction on self-defense. For the following reasons, we find the assignments of error to be without merit and affirm Hollie's

convictions.

***Substantive and Procedural History***

{¶2}   On August 14, 2025, the Trumbull County Grand Jury returned an Indictment charging Hollie with the following: Murder (Count 1) with a firearm specification and repeat violent offender specification in violation of R.C. 2903.02(A) and (D), R.C. 2941.145, and R.C. 2941.149; Having Weapons while Under Disability (Count 2) with a firearm specification, a felony of the third degree in violation of R.C. 2923.13(A)(2) and (B) and R.C. 2941.145; Tampering with Evidence (Count 3), a felony of the third degree in violation of R.C. 2921.12(A)(1) and (B); Failure to Comply with Order or Signal of Police Officer (Count 4), a felony of the third degree in violation of R.C. 2921.331(B), (C)(1) and (5)(a)(ii); and Receiving Stolen Property (Count 5), a felony of the fourth degree in violation of R.C. 2913.51(A) and (C).

{¶3}   The charges against Hollie were tried before a jury between October 20 and 22, 2025.  The following testimony was presented at trial:

{¶4}   Officer Ryan Young of the Warren Police Department testified that, at about 2:30 a.m., on August 3, 2025, he responded to the report of shooting in the 300-block of Scott Street in Warren.  Young found the victim, Choice Washington, with a single gunshot wound to the head.  Washington was still breathing but would die before arriving at the hospital.  One of the persons at the scene, Christopher Murray, reported that his vehicle, a Buick LaCrosse, had been stolen.  Young issued a BOLO ("be on the lookout") for the Buick.

{¶5}   Trooper Brandon Gibson of the Ohio State Highway Patrol located the Buick on East Market Street at about 3:00 that morning.  A pursuit ensued leading to Route 422.

Case No. 2025-T-0094

Gibson disabled the Buick by executing a PIT (precision immobilization technique) maneuver. Hollie was operating the vehicle. Hollie's bank card, a camouflage-print jacket, and a headwrap were recovered from the vehicle. Video of the pursuit was played for the jury.

{¶6} Detective Zachary Jones of the Warren Police Department obtained surveillance video from one of the residences on Scott Street which recorded the shooting. The video was played for the jury. Jones recognized Hollie as the shooter in the video, who was wearing a camouflage-print jacket. Hollie could also be seen leaving the scene in a Buick LaCrosse.

{¶7} Sergeant Ariana McBride of the Trumbull County Sheriff's Office obtained audio and video recordings from the Trumbull County Jail. In the recordings, Hollie places a phone call in which he discusses the shooting. The recordings were played for the jury.

{¶8} Michelle L. Snyder, a forensic scientist with the Ohio BCI (Bureau of Criminal Investigation), testified that there was gunshot residue on the camouflage-print jacket recovered from the Buick which Hollie was seen wearing in the surveillance video.

{¶9} Brittani Troyer, also a forensic scientist with the BCI, testified that Hollie's DNA (deoxyribonucleic acid) was found on the camouflage-print jacket and the headwrap recovered from the Buick.

{¶10} Christopher Murray, the owner of the Buick, testified that he was visiting a friend on Scott Street on the night in question. He was very intoxicated and did not recall how Hollie obtained his keys. He reported the theft of his vehicle to law enforcement after the shooting of Washington.

{¶11} Kevin Streeter was present on Scott Street at the time of the shooting. He

Case No. 2025-T-0094

heard Hollie and Washington engaged in a loud argument. Hollie was yelling at Washington who seemed unsure what the argument was about.

{¶12} The jury found Hollie guilty of all counts as charged in the Indictment.

{¶13} Sentencing hearings were held on October 28 and November 18, 2025.

{¶14} The Entry on Sentence was issued on November 25, 2025. Hollie was sentenced as follows: for Murder, a term of life imprisonment with parole eligibility after fifteen years with three additional years for the firearm specification and ten additional years for the repeat violent offender specification; for Having Weapons while Under Disability, thirty-six months in prison plus three years for the firearm specification; for Tampering with Evidence, thirty-six months in prison; for Failure to Comply with Order or Signal of Police Officer, thirty-six months in prison; and for Receiving Stolen Property, eighteen months in prison. All sentences were ordered to be served consecutively for an aggregate sentence of forty-one and one-half years to life.

## Assignments of Error

{¶15} On December 22, 2025, Hollie filed a Notice of Appeal. On appeal he raises the following assignments of error:

> [1.] Appellant's trial counsel rendered ineffective assistance of counsel for failure to provide Appellant with essential discovery for viewing (video of incident), prior to trial.
>
> [2.] The Appellant is entitled to a new trial because of the trial court's failure to give a self-defense instruction based on the evidence presented at trial, namely State's Exhibit [7], and Defendant's Exhibit A.

## First Assignment: Ineffective Assistance of Counsel

{¶16} "The Sixth Amendment to the United States Constitution guarantees a

Case No. 2025-T-0094

defendant the effective assistance of counsel at "'critical stages of a criminal proceeding," including when he enters a guilty plea.'" (Citations omitted.) *State v. Romero*, 2019-Ohio-1839, ¶ 14. "When a defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test set out in *Strickland* [*v. Washington*], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674." *Id.*

{¶17} "First, the defendant must show that counsel's performance was deficient." *Id.* at ¶ 15. Counsel is not deficient *ipso facto* for failing to share discovery materials with a defendant. "In fact, in the few cases in which defendants have claimed a right of access to all discovery materials, 'most courts have held that "[t]rial counsel's decision whether to provide [the defendant] with discovery materials constitutes a matter of trial strategy and judgment that ultimately lies within counsel's discretion."'" (Citations omitted.) *State v. Thompson*, 2014-Ohio-4751, ¶ 219.

{¶18} "Second, the defendant must demonstrate prejudice resulting from counsel's deficient performance." *Romero* at ¶ 16. "The defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (Citation omitted.) *Id.*[1] "[I]n adjudicating a claim of ineffective assistance of counsel, the prongs of the *Strickland* test may be considered in any order and … '[i]f it is easier to dispose of an ineffectiveness

_____

1. We note that some courts have elaborated the requirements for demonstrating prejudice in the plea context. *See*, *e.g.*, *State v. Magan*, 2026-Ohio-1466, ¶ 11 (10th Dist.), following *Lafler v. Cooper*, 566 U.S. 156, 164 (2012), and *Missouri v. Frye*, 566 U.S. 134, 147 (2012): "To satisfy the prejudice requirement in such circumstances, a defendant must show that (1) but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").

Case No. 2025-T-0094

claim on the ground of lack of sufficient prejudice … that course should be followed.'" *State v. Rogers*, 2025-Ohio-4794, ¶ 39, citing *Strickland* at 697.

### Hollie Cannot Demonstrate Prejudice

{¶19} Hollie argues that "trial counsel was ineffective, *per se*, for his failure to take appropriate measures to ensure that Appellant was able to view the video of the incident, prior to trial" as this "would have allowed Appellant to ascertain whether he should go to trial or accept the plea bargain." Assignments of Error and Merit Brief of Defendant-Appellant at 8.

{¶20} At the commencement of trial, the trial court addressed Hollie regarding the plea agreement offered by the State whereby he would receive a sentence of twenty-one years to life. Hollie affirmed that he rejected the offer to plead.

{¶21} At the initial sentencing hearing, on October 28, 2025, the trial court asked Hollie if he wished to speak "only regarding mitigation for your sentencing." Hollie responded:

> Your Honor, I seen the video, just like everybody else, for the first time when I was sitting in this courtroom. When I first met my attorney, he came into the county jail and he told me he wasn't allowed to bring that video into the county jail. … If I would have been able to see that video before I went through this trial, I would have took the deal that the prosecution offered me, which was twenty-one to life. I would have never proceeded with trial.

Hollie repeated this claim at the second sentencing hearing on November 18.

{¶22} Hollie's assertion that he would have pled if he had seen the surveillance video prior to trial does not establish actual prejudice. Simply because Hollie was not shown the video does not mean that trial counsel failed to inform him of the video's existence or its content, that trial counsel misrepresented to him the likelihood of a

favorable outcome at trial or the success of a self-defense claim, or that trial counsel advised him to reject the plea offer.

{¶23} Hollie counters that trial counsel failed to contradict Hollie's assertion at either sentencing hearing and that counsel's silence "speaks volumes … as to the advancement of this first assignment of error." We disagree. On both occasions that Hollie raised the claim about not viewing the video, the trial court made it clear it was only interested in argument regarding mitigation and sentencing. Consistent with this attitude, the court did not inquire further from either Hollie or defense counsel regarding Hollie's assertion. Given the context, trial counsel's failure to rebut Hollie's claim does not amount to tacit agreement.

{¶24} Finally, the State presented evidence during the course of the trial that demonstrates Hollie was aware of the surveillance video's existence, the content of the video, and that the police possessed a copy of the video.

{¶25} At trial, a video was played for the jury in which Hollie was speaking to his brother from the Trumbull County Jail. Hollie's brother informs him that he "got the demo on my phone." Hollie asks if anyone else has seen it. His brother responds that "the landlord sent it to the police." His brother states further:

> I ain't gonna lie, it don't look bad. … It look kinda good for real because I seen the nigga rush you … I see that you … protecting … standing your ground. … The only thing … that looks bad … is that you got in the car, you got out the car, you got back in the car, you got out the car, and then you went back in the car and that was the last time, but even though you went back in the car it looked like he said something to you, and then you got out the car, and then y'all was … talking, but then he's like [coming] towards you or something and you flipped him, and then he tried it again, … and that's when it happened.

Case No. 2025-T-0094

Hollie responds, "I didn't know that" but "we have to get ready."

{¶26} Hollie and his brother also discussed whether Washington had a weapon. His brother advises that "they say he didn't" but "I don't know" and "you never know." Hollie admits that "I don't know what he had."

{¶27} These recordings establish that, prior to trial, Hollie knew the police had a video of the incident and what the video did and did not depict. Given the absence of any details about what trial counsel advised Hollie regarding the plea offer, and Hollie's knowledge of the video prior to trial, the bare assertion that, had he seen the video, he would have accepted the plea offer does not establish a credible claim of prejudice, *i.e.*, that Hollie would in fact have accepted the plea offer.

{¶28} The first assignment of error is without merit.

***Second Assignment: Failure to Instruct the Jury on Self-Defense***

{¶29} "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense," *i.e.*, "if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *State v. Messenger*, 2022-Ohio-4562, ¶ 25.

{¶30} To be entitled to a self-defense jury instruction the defendant must produce legally sufficient evidence that "(1) he was not at fault in creating the situation that led to the affray, (2) he had a 'bona fide belief' that he was 'in imminent danger of death or great bodily harm' and his only way to escape was by using force, and (3) he did not violate a duty to retreat." (Citation omitted.) *State v. Palmer*, 2024-Ohio-539, ¶ 23.

{¶31} "[T]he trial judge is in the best position to gauge the evidence before the jury and … determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 2008-Ohio-936, ¶ 72. "When determining whether evidence is sufficient, a trial court must consider only the adequacy of the evidence presented— not its persuasiveness." *Palmer* at ¶ 21. "The question is not whether the evidence should be believed but whether the evidence, *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense." *Id.*

{¶32} "[W]hen a trial court refuses to give a requested jury instruction, the proper standard of review is whether the trial court abused its discretion under the facts and circumstances of the case." *Id.* at ¶ 16. Accordingly, an appellate court "will reverse the trial court's decision to deny a defendant's request for a self-defense jury instruction only if the trial court's 'attitude [was] unreasonable, arbitrary or unconscionable.'" *Id.* at ¶ 22.

### Hollie Failed to Produce Evidence that he was in Danger of Death or Great Bodily Harm

{¶33} In the present case, it is only necessary to consider the second element of a self-defense claim to affirm that the trial court acted within its discretion to refuse to give the jury instruction, *i.e.*, whether Hollie "present[ed] adequate evidence that a reasonable person, under the same circumstances and with [his] same subjective beliefs and faculties, would have believed that he was in imminent danger and that deadly force was necessary." *Palmer* at ¶ 25.[2] Hollie argues that the surveillance video of the incident, a

---

2. In *State v. Thomas*, 77 Ohio St.3d 323 (1997), the Supreme Court of Ohio described the second element of a self-defense claim as having a subjective and an objective component. "[T]he jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, [he] *reasonably* believed [he] was in imminent danger." *Id.* at 330. "Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an *honest* belief that [he] was in imminent danger." *Id.* at 331.

Case No. 2025-T-0094

still photograph made from the video, and Streeter's testimony "certainly fulfilled Appellant's burden of persuasion on the issue of whether he was entitled to an instruction on self-defense." Assignments of Error and Merit Brief of Defendant-Appellant at 15.

{¶34} Hollie claims that the victim is holding what appears to be a gun in the surveillance video, captured in a still photograph. We disagree. In the video, Hollie is already on the scene in the stolen Buick when Washington arrives. Washington exits his vehicle holding a black object, captured in the still photograph, which appears to be a phone. Washington walks past the Buick and up the steps to the porch of a house. Hollie opens the door to the Buick and the two begin to converse. Washington moves the black object from one hand to the other. There is a gap in the video of about one minute at this point.[3] When the video resumes, no object is seen in Washington's hands.

{¶35} There is no testimony from any witness that Washington had a firearm on the night in question. Streeter did not testify that Washington had a firearm. Whatever the object in Washington's hand was, he did not aim or otherwise brandish it at Hollie. When the video resumes after the point at which the still photograph is taken, Washington's hands are empty and remain empty until he is shot. The police officers who responded to the shooting testified that no weapon was found at the scene.

{¶36} The video and photographic evidence would not convince a rational trier of fact that Washington was armed or, if he were armed, that he caused Hollie to believe that he was in imminent danger of great bodily harm. In addition to the foregoing, we note that the video depicts Washington pushing against Hollie, but at this point he is not holding

---

3. As explained at trial, the recording system was motion activated. So intermittent lapses in the video, from several seconds to several minutes, are a result of a lack of motion detected by the recording system.

Case No. 2025-T-0094

anything.  Washington never struck Hollie while he flipped Washington onto the ground. Streeter affirmatively testified that Washington did not threaten Hollie and that he seemed genuinely confused about why the altercation was taking place.  Finally, Hollie himself admits in the phone call from jail, "I don't know what he had."  We find no abuse of discretion in the trial court's decision not to give the self-defense instruction.

{¶37}  The second assignment of error is without merit.

{¶38}  For the foregoing reasons, Hollie's convictions are affirmed.  Costs to be taxed against the appellant.


EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0094